# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 14, 2006

## STATE OF TENNESSEE v. JERRY JEROME PRIMM

**Appeal from the Criminal Court for Davidson County**
**No. 2003-D-2636     J. Randall Wyatt, Jr., Judge**

---

**No. M2005-00301-CCA-R3-CD - Filed June 29, 2006**

---

A Davidson County jury convicted the defendant, Jerry Jerome Primm, of second degree murder, especially aggravated kidnapping, and felony murder, for which he received an effective sentence of life imprisonment plus twenty years.  Aggrieved that his convictions were unsupported by sufficient evidence and that his sentences were erroneous, he now brings the instant appeal.  We affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court are Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Michael Colavecchio, Nashville, Tennessee, for the Appellant, Jerry Jerome Primm.

Paul G. Summers, Attorney General & Reporter; Preston Shipp, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and James Todd, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On June 3, 2002, the defendant arranged to pick up Rodney Campbell and his cousin, Cornelius Primm.  The two men were helping the defendant locate an individual who had robbed the defendant a few days earlier.  The defendant picked up another individual, Brandon Lake, who claimed to know the location of the victim, Gary Moment.  Apparently, the defendant believed that the victim knew the whereabouts of his robber.

With Brandon Lake's assistance, the defendant located the victim who was standing on a nearby street.  The defendant then spoke to the victim from inside his vehicle and instructed the victim to get into the vehicle.  The victim first refused but then reluctantly agreed, and as Brandon Lake exited the vehicle, the victim entered the car and sat in his place in the left rear passenger seat. The defendant then instructed Cornelius Primm, who was seated in the right rear passenger seat, to

switch places with him so that Cornelius Primm was driving the vehicle, and the defendant was seated in the rear seat with the victim.

The defendant asked the victim where he lived, and after receiving this information, they drove to the victim's house. Once parked outside the victim's residence, the defendant displayed his gun on his lap. The defendant then hit the victim's head with his gun and exited the vehicle. Before exiting, he instructed Rodney Campbell to shoot the victim if the victim tried to leave the car. The victim then tried to reach for the gun in Mr. Campbell's lap while at the same time reaching for the car door. When the victim was out of the car, Mr. Campbell began shooting at him as he ran away.[1] Moments later, the defendant also began shooting at the fleeing victim. Cornelius Primm estimated that the defendant fired six shots at the victim. The defendant, Mr. Campbell, and Cornelius Primm then drove to the defendant's sister's house in the defendant's vehicle.

On June 6, 2002, the victim's sister, Lisa Moment, began searching for the victim after receiving a call from the victim's employer informing her that he had missed several days of work. She eventually discovered the defendant's decomposing body in a backyard near the scene of the shooting.

Three days earlier, on June 3, 2002, a police officer had responded to a report of gun fire near the victim's residence. He investigated the general area but did not discover the victim. After Ms. Moment discovered the victim's body on June 6, the police resumed their investigation. A witness who observed the victim enter the defendant's vehicle identified Brandon Lake as an occupant of the vehicle. The police subsequently questioned all occupants of the vehicle, including the defendant, who made a sworn statement recounting his claimed involvement in the crime. The police searched the defendant's vehicle. Due to the decomposed state of the victim's body, they were unable to match the blood found in the vehicle to the victim's blood, but by taking a blood sample from the victim's mother, they were able to extrapolate that the blood found in the defendant's vehicle belonged to male offspring of the victim's mother.

Police recovered a .380 caliber handgun from Mr. Campbell's residence and a .357 caliber handgun from the defendant's girlfriend's residence. A medical examiner testified that the autopsy of the victim's body revealed that the victim died of gunshot wounds to his torso. The two bullets recovered from the victim's body were fired by Mr. Campbell's .380 caliber handgun.

Based on this evidence, the jury convicted the defendant of second degree murder, especially aggravated kidnapping, and first degree felony murder. The trial court merged the conviction of second degree murder into that of first degree felony murder. It imposed a life sentence for the homicide, plus twenty years for the especially aggravated kidnapping.

---

[1] Mr. Campbell asserted his Fifth Amendment right against self-incrimination when called to testify at the defendant's trial. However, the state introduced Mr. Campbell's statements to the police about his involvement in the instant crime, and the defendant introduced portions of Mr. Campbell's prior testimony.

*Sufficiency of the Evidence*

The defendant argues that the evidence introduced at trial is insufficient to support his especially aggravated kidnapping, felony murder, and second degree murder convictions. When an accused challenges the sufficiency of the evidence, an appellate court inspects the evidentiary landscape, including the direct and circumstantial contours, from the vantage point most agreeable to the prosecution. The reviewing court then decides whether the evidence and the inferences that flow therefrom permit any rational fact finder to conclude beyond a reasonable doubt that the defendant is guilty of the charged crime. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985); *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

In determining sufficiency of the proof, the appellate court does not replay or reweigh the evidence. *See State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Witness credibility, the weight and value of the evidence, and factual disputes are entrusted to the finder of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). Simply stated, the reviewing court will not substitute its judgment for that of the trier of fact. Instead, the court extends to the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. *See Cabbage*, 571 S.W.2d at 835.

With these principles in mind we must determine whether the evidence in this record is sufficient to support the jury's verdicts. We begin with the definitions of the challenged conviction offenses. Especially aggravated kidnapping is defined, in relevant part, as false imprisonment that is accomplished "with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon, or . . . [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-305 (2003). False imprisonment is defined as the unlawful and "knowing[] remov[al] or confine[ment of] another so as to interfere substantially with the other's liberty." *Id.* § 39-13-302. First degree felony murder is defined as the "killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy." *Id.* § 39-13-202(a)(2). Second degree murder is defined as "the knowing killing of another." *Id.* § 39-13-210(a)(1).

The defendant asserts that there is insufficient evidence to support a finding that he committed the especially aggravated kidnapping of the victim because the state failed to prove that the defendant falsely imprisoned the victim. The defendant argues that witness testimony reflects that the victim reluctantly agreed to enter the victim's car, not that the defendant removed or confined the victim. The defendant further asserts that the recovered bullets from the victim's body do not implicate him as the shooter and that the evidence does not support a finding that the defendant was criminally responsible for the shooting.

-3-

When viewed in the light most favorable to the state, *see Cabbage*, 571 S.W.2d at 835, the evidence demonstrates that the defendant persuaded the reluctant victim to enter his vehicle and that once inside the vehicle, the defendant struck the victim's head with his handgun. Thereafter, the defendant instructed Mr. Campbell to shoot the victim if he tried to exit the vehicle, and after the victim exited the vehicle, both Mr. Campbell and the defendant fired their guns at the victim multiple times, resulting in the victim's death. Accordingly, we hold that a jury could have reasonably concluded that defendant falsely imprisoned the victim by brandishing a firearm, using that firearm to injure the victim, instructing someone to restrain the victim with a deadly weapon, and eventually shooting and killing the victim. Thus, the evidence is sufficient to support the defendant's especially aggravated kidnapping conviction, his first degree felony murder conviction, and his second degree murder conviction.

*Sentencing Challenge*

The defendant asserts that the trial court improperly imposed his twenty-year especially aggravated kidnapping sentence by failing to specify how his sentence length was derived as mandated by Tennessee Code Annotated section 40-35-210. *See* Tenn. Code Ann. § 40-35-210 (2003). Moreover, the defendant argues that the trial court failed to make the requisite findings to support its imposition of consecutive sentencing.[2]

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000). "The burden of showing that the sentence is improper is upon the appellant." *Ashby*, 823 S.W.2d at 169. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. *Id.* If appellate review, however, reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The mechanics of arriving at an appropriate sentence are spelled out in the Criminal Sentencing Reform Act of 1989. At the conclusion of the sentencing hearing, the trial court determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the

_____

[2] The defendant does not challenge the imposition of his felony murder conviction life sentence, presumably because felony murder convictions carry a mandatory life sentence. *See* Tenn. Code Ann. 39-13-202(c)(3) (2003).

defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -35-103(5) (2003); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

The defendant challenges his twenty-year especially aggravated kidnapping conviction sentence as excessive, arguing that the trial court did not properly elucidate reasons for imposing the maximum sentence within his applicable sentencing range. However, a twenty-year sentence is the presumptive, not maximum, sentence within the defendant's 15 to 25 year range. *See* Tenn. Code Ann. 39-13-305(b)(1) (2003) (classifying especially aggravated kidnapping as a Class A felony); 40-35-112(a)(1) (defining the sentencing range for standard offenders committing Class A felonies as 15 to 25 years); 40-35-210(c) (defining the presumptive sentence as the midpoint within the applicable sentencing range). Accordingly, the trial court was not required to enumerate applicable enhancement factors when imposing the presumptive sentence.

Next, we turn to the defendant's assertion that the trial court erred when ordering him to serve his especially aggravated kidnapping conviction sentence consecutively to his life sentence. The trial court found the defendant to be a dangerous offender and accordingly imposed consecutive sentencing. The court concluded that the defendant is a dangerous offender because he shot the victim multiple times while the victim was fleeing. *See id.* § 40-35-115(b)(4) (instructing that a trial court may impose consecutive sentences if the court finds by a preponderance of the evidence that, inter alia, "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high"). We hold that the defendant's shooting of an unarmed retreating victim is sufficient to support a finding that the defendant is a dangerous offender. *See, e.g., State v. Recardo Dale*, No. W2003-02391-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Jackson, Jan. 10, 2005) (finding classification of defendant as a dangerous offender appropriate when defendant shot unarmed, cooperative victim) *perm. app denied* (Tenn. 2005); *State v. Daniel Wade Wilson*, No. E2003-02070-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Knoxville, May 26, 2004) (finding classification of defendant as a dangerous offender appropriate when defendant repeatedly stabbed an unarmed victim).

The court further found that the sentence was reasonably related to the severity of the offense and that confinement was necessary to protect the public from further criminal activity. Accordingly, the trial court made the requisite findings to support an imposition of consecutive sentencing, *see State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995), and after conducting our de novo review of the record, we find that the court's findings are supported by the record.

In sum, we hold that the defendant's convictions and sentence are supported by the record, and therefore, none of the defendant's arguments entitle him to relief.

_____
JAMES CURWOOD WITT, JR., JUDGE